UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~

In re
**CHARLES CURTIS MILLS,**
    Debtor

Chapter 7
Case No. 11-14097-JNF

~~~~~~~~~~~~~~~~~~~~~~~

**ANDREW S. RICHARDSON,**
    Plaintiff
v.
**CHARLES CURTIS MILLS,**
    Defendant

Adv. P. No. 11-1245

~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the "Defendant's Motion for Dismissal with Prejudice of All Counts and Claims" filed by the Debtor/Defendant, Charles Curtis Mills (the "Debtor," the "Defendant," or "Mills"). The Plaintiff, Andrew S. Richardson (the "Plaintiff" or "Richardson"), filed an Opposition. Both parties filed briefs. On November 14, 2011, the Debtor moved to continue the hearing on his Motion for Dismissal which had been scheduled for November 16, 2011. In lieu of rescheduling the hearing, the Court canceled the hearing, determining that oral argument was unwarranted and that the

1

Motion for Dismissal could be decided on the papers submitted by the parties. The issue presented is whether the Plaintiff has satisfied the legal standard applicable to motions to dismiss set forth in <u>Ashcroft v. Iqbal</u>, __U.S. __, 129 S.Ct. 1937 (2009). In that case, the Supreme Court amplified its discussion of the standard for dismissal contained in <u>Bell Atlantic Corp. v. Twombly</u>, 550 US. 544 (2007), a decision in which the Supreme Court modified the long-standing test set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957), for evaluating whether a complaint should survive a motion to dismiss.

## II. THE DISMISSAL STANDARD

The Supreme Court in <u>Iqbal</u> stated:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in <u>Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant unlawfully harmed me accusation. <u>Id.</u>, at 555, 127 S.Ct. 1955 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct 1955. Nor does a complaint suffice if it tenders "naked assertion [s]" devoid of "further factual enhancement." <u>Id.</u>, at 557, 127 S.Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Id.</u>, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Id.</u>, at 556, 127 S.Ct 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. <u>Ibid</u>. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " <u>Id.</u>, at 557, 127 S.Ct. 1955 (brackets omitted).

Iqbal, 129 S.Ct. at 1949.

### III. THE PLAINTIFF'S COMPLAINT

The Plaintiff filed a 21-page Complaint with 61 numbered paragraphs containing factual allegations. He attached numerous exhibits to his Complaint. The Plaintiff recited that in February of 2008 he commenced a civil action against the Debtor who owned and operated a lacrosse training business known as "MaxLax Lacrosse Programs," seeking an accounting and damages for breach of contract and fraud relating to a joint venture of the parties to acquire, develop, and re-sell property at 49 Glades Road, Scituate, Massachusetts (the "Property"). According to the Plaintiff, he and Mills had known one another for over 20 years. The Plaintiff alleged that the Debtor contacted him in the spring or summer of 2002 and asked him to participate in the joint venture, and, specifically "for a loan of $200,000 and a power of attorney naming Mills as Richardson's attorney-in-fact so that Mills could apply for joint mortgage financing, purchase and sell the Property in the parties' names, and execute any other tasks related to the joint venture on Richardson's behalf." The Plaintiff agreed to Mills's terms and forwarded to Mills a signed check made payable to Mills, which Mills then deposited into his personal and business checking account.

On September 23, 2002, Mills executed a written offer to purchase the Property for $675,000. Subsequently, on October 21, 2002, the Plaintiff executed a power of attorney giving Mills "full power and authority to do and perform every act and thing whatsoever requisite and necessary to be done in and about the premises for the stated purpose and

3

to execute any and all documents . . . ."

The Plaintiff alleged that Mills, individually, and as the Plaintiff's attorney-in-fact, applied for a loan from Rockland Trust in the sum of $540,000. On January 13, 2003, a deed to the Property was recorded, reflecting a purchase price of $675,000. Mills then obtained a construction loan from the Bank of Canton, individually and as the Plaintiff's attorney-in-fact. On April 8, 2003, the Plaintiff executed a second power of attorney, and one day later, Mills, individually, and as the Plaintiff's attorney-in-fact, executed a "Commercial Mortgage, Security Agreement and Assignment of Leases and Rents" in favor of "The Canton Institution for Savings, The Bank of Canton [sic]" in the amount of $1.2 million. The Plaintiff alleged that Mills used a portion of the loan proceeds to discharge the Rockland Trust mortgage, but that he also disbursed some of the loan proceeds to MaxLax Lacross and other entities unrelated to the Property or the real estate development project. He also "disbursed at least $460,550 of The Bank of Canton construction loan proceeds using checks payable to 'Cash.'"

According to the Plaintiff, on April 11, 2003, Mills, individually, and as his attorney-in-fact, executed a "Fleet Line Agreement [sic]" giving Fleet Bank a mortgage on the Property to secure a $70,000 line of credit, although Fleet failed to record the mortgage. The Plaintiff alleged that "Mills disbursed at least $100,500 [sic] on the Fleet Line of credit using checks payable to 'Cash,' all of which he endorsed."

The Plaintiff further alleged that in September of 2004, the Debtor contacted him seeking an additional loan for the Property and, on September 22, 2004, he provided Mills

4

with an additional sum of $115,000, which the Debtor deposited. At the same time, Mills, on behalf of MaxLax Lacrosse Programs, LLC obtained a loan in the sum of $350,000 from Black Rock Development, Inc. ("Black Rock") to complete a lacrosse facility in Pembroke, Massachusetts. Mills, individually, and as Richardson's attorney-in-fact, granted Black Rock a $350,000 mortgage on the Property and, in addition, executed a note and a "Guaranty of Payment and Performance Obligations." Black Rock, however, could not record the mortgage because the Plaintiff's power of attorney "was too old." Subsequently, according to the Plaintiff, Mills borrowed an additional $38,000 from Black Rock whose principal is or was George McGoldrick.

On April 11, 2005, Mills, individually, and as the Plaintiff's attorney-in-fact, executed an agreement to sell the Property for $2.022 million. The sale closed on April 15, 2005 and Mills received a check for the net proceeds in the sum of $479,079.27, which was payable to "Curt Mills and Andrew Richardson." The Plaintiff alleged that on that same day Mills deposited the check into his account for MaxLax Lacrosse and that on the day prior to the sale that account had a negative balance.

According to the Plaintiff, on April 27, 2005, Mills paid McGoldrick $360,000 using funds from the MaxLax Lacrosse account. The Plaintiff also alleged that he was not informed of the sale of the Property, told of the $479,079.27 check, or provided with any portion of the sale proceeds. The Plaintiff alleged that in January of 2006 he contacted Mills through his attorneys, seeking an update on the status of the project. Mills's responded by stating that "[w]e are pursing the release/repayment of the funds in question." One year

5

later the Plaintiff contacted Mills again seeking an accounting. After a subsequent inquiry, Mills sent Richardson a series of emails whose purpose was to delay an accounting. In August of 2007, Mills emailed the Plaintiff admitting that he would not receive a return on his investment. Additionally, according to the Plaintiff, he was required to use his personal funds in the sum of $74,803.73 to pay the balance of the Fleet line of credit.

As noted above, the Plaintiff commenced an action against Mills in the Norfolk County Superior Court, Department of the Trial Court, seeking an accounting of the use of the $315,000 he advanced, repayment of that sum, and reimbursement of the money used to satisfy the Fleet line of credit, as well as a share of the profit and damages for breach of contract and fraud. The Plaintiff asserted that Mills advised him that he filed a bankruptcy petition in June of 2008, although, in fact, he had did not file a bankruptcy petition until April 30, 2011, after the Plaintiff obtained a real estate attachment against all of Mills's real estate in Massachusetts and the Superior Court had scheduled a trial in the action for May 2, 2011.

Based upon the foregoing, the Plaintiff, in his Complaint filed in this court, fashioned three counts: Count I - Exception to Discharge under 11 U.S.C. § 523(a)(2)(A) (Embezzlement); Count II - Exception to Discharge under 11 U.S.C. § 523(a)(2)(A) (Money Obtained by False Pretenses, False Representations or Actual Fraud);  and Count III - Exception to Discharge under 11 U.S.C. § 523(a)(4) (Fraud or Defalcation While Acting in a Fiduciary Capacity). With respect to Count I, the Plaintiff asserted that he entrusted $315,000 to Mills and granted him a power of attorney and that Mills "intentionally,

6

willfully, and maliciously converted" some portion of that money and profits for his own interests. Additionally, he alleged that Mills embezzled his share of the profits "which should equal one-half the money taken in on the project minus one half the money spent on the project, i.e., the money Mills borrowed as Richardson's attorney in fact but converted to Mills's own interests should not be counted as project-related expenses" and the $74,803.73 he was forced to repay.

With respect to Count II, the Plaintiff alleged that Mills made representations in 2002 and again in 2004 that he knew to be false with the intention and purpose of deceiving him and inducing him to rely upon the representations; that he justifiably and reasonably relied upon Mills's representations; and that he suffered damages. Finally, the Plaintiff alleged that the monies he advanced were to be used exclusively to advance the interests of the joint venture, that he was to be repaid one-half the profits from the joint venture, and that Mills retained and converted monies.

## IV. THE MOTION TO DISMISS

The Debtor moves to dismiss based upon the Statute of Frauds. He asserts that, contrary to statutory requirements, no written agreement, contract, or memorandum memorializing the respective responsibilities of the parties was executed, contemplated, consummated, or agreed to by the parties. The Debtor admitted, however, that there was an informal understanding that he and Richardson agreed to share in any profits of their joint venture. Additionally, the Debtor asserted that the Plaintiff failed to satisfy the pleading requirement of Fed. R. Civ. P. 9(b), as he failed to plead fraud or deceit with

7

particularity, adding that there is no reference to embezzlement in 11 U.S.C. § 523(a)(2)(A). Mills also argued that the Plaintiff "failed to satisfactorily establish or present the necessary elements to support a cause of action based in and upon fraud or deceit, and/or embezzlement." Finally, Mills argued that the statute of limitations bars the Plaintiff's tort claims.

Mills focused on the elements necessary to establish a claim for misrepresentation under 11 U.S.C. § 523(a)(2)(A) and the Plaintiff's failure to set forth facts "as to the time, place, manner and context" of the representations. Mills also argued that "[t]here is no proof or evidence offered in the highly conclusory and speculative nature" of the Plaintiff's pleadings that the Defendant had an intent to deceive. He made the same arguments with respect to the Plaintiff's claim that he embezzled monies.

## V. DISCUSSION

Accepting the Plaintiff's well-pleaded facts as true, the Court finds that the Plaintiff has stated claims for embezzlement and defalcation while acting in a fiduciary capacity that are plausible exceptions to discharge purusant to 11 U.S.C. § 523(a)(4) on their face. Embezzlement is defined as follows:

> [T]he fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful or with [the] consent of the owner, while in larceny the felonious intent must have existed at the time of the taking.

Sullivan v. Clayton (In re Clayton), 198 B.R. 878, 884 (Bankr. E.D. Pa. 1996)(quoting Rolley v. Spector (In re Spector), 133 B.R. 733, 741 (Bankr. E.D. Pa. 1991)). Embezzlement occurs

when funds are transferred to a party who is authorized to receive them but who misappropriates the funds once acquired. 198 B.R. at 884 (citing Spector, 133 B.R. at 741). To prove embezzlement, under § 523(a)(4), the plaintiff must show "that (1) the debtor appropriated [the subject] funds for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit." In re Weber, 892 F.2d 534, 538 (7th Cir.1989).

The Plaintiff alleged that Mills obtained funds from him based upon a proposal to acquire and develop property with a water view in Scituate, Massachusetts. Having obtained the funds, the Plaintiff alleged that he diverted them to pay expenses associated with his business, MaxLax Lacrosse. The Court finds that those allegations are sufficient to state a plausible claim for embezzlement under 11 U.S.C. § 523(a)(4), not § 523(a)(2)(A) as set forth in the Plaintiff's Complaint. Accordingly, the Court shall enter an order requiring the Plaintiff to file an Amended Complaint to correct the reference in Count I pertaining to the Debtor's alleged embezzlement to reflect that it is a claim under § 523(a)(4), not §523(a)(2)(A).

In Smith v. Marcet (In re Marcet), 352 B.R. 462 (Bankr. N.D. Ill. 2006), the court set forth the applicable law relative to powers of attorney. It stated:

> [T]he Court must determine whether the Debtor's role as attorney-in-fact pursuant to the power of attorney created a fiduciary relationship between the Debtor and Smith. A power of attorney is a written instrument whereby the principal appoints the attorney-in-fact as agent and confers on the attorney-in-fact the authority to perform acts on behalf of the principal. Artis v. West (In re West), 339 B.R. 557, 567 (Bankr. E.D.N.Y. 2006). Pursuant to Illinois law, a power of attorney creates a fiduciary relationship as a matter of law. Boyce v. Fernandes, 77 F.3d 946, 950 (7th Cir. 1996); Apple v. Apple, 407 Ill. 464, 95 N.E.2d 334, 338 (1950); In re Estate of Miller, 334 Ill.App.3d

9

> 692, 268 Ill. Dec. 276, 778 N.E.2d 262, 266 (2002); Lexington Health Care Ctr. of Elmhurst v. McDade (In re McDade), 282 B.R. 650, 659–60 (Bankr. N.D. Ill. 2002) (citing Illinois cases). Accordingly, once the power of attorney was executed, the Debtor was responsible as a fiduciary to Smith. See In re Estate of Savage, 259 Ill.App.3d 328, 197 Ill. Dec. 575, 631 N.E.2d 797, 799 (1994). This Illinois rule, however, is not outcome determinative under § 523(a)(4).
>
> The general fiduciary duty created by a power of attorney does not necessarily give rise to the fiduciary capacity required by § 523(a)(4). West, 339 B.R. at 567; Valley Mem'l Homes v. Hrabik ( In re Hrabik), 330 B.R. 765, 773 (Bankr. D.N.D. 2005); Bast v. Johnson (In re Johnson), 174 B.R. 537, 541 (Bankr. W.D. Mo. 1994). Rather, the power of attorney gives rise to an agency relationship. Id. However, if a debtor has an elevated level of fiduciary duty, such a relationship could give rise to the requisite fiduciary capacity required by § 523(a)(4). Id. According to the Seventh Circuit, in order to be a fiduciary for purposes of § 523(a)(4), there must be "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." Marchiando, 13 F.3d at 1116.

In re Marcet, 352 B.R. at 473.

According to the court in Perez v. First Option Mortg. Corp. (In re Perez), No. 08-40693-JBR, 2008 WL 4164372 (Bankr. D. Mass. Sept. 3, 2008), "[i]n Massachusetts, it is well settled that execution of a power of attorney creates a fiduciary relationship." 2008 WL 4164372 at * 5 (citing Gagnon v. Coombs, 39 Mass.App.Ct. 144, 154 (2005)). Because Mills held a power of attorney and because he was a partner in a joint venture with the Plaintiff, the Court finds that the Plaintiff has alleged sufficient facts to state a plausible claim for relief under § 523(a)(4). As this Court observed in Baker v. Friedman (In re Friedman), 298 B.R. 487 (Bankr. D. Mass. 2003)

> In Massachusetts, partners occupy a trust relation toward each other and are bound to exercise the utmost good faith toward each other. Hawkes v. First Nat'l Bank of Greenfield, 264 Mass. 538, 543, 163 N.E. 246 (1928). Further, the standard of duty owed by partners to one another is one of utmost good faith

10

and loyalty. Cardullo v. Landau, 329 Mass. 5, 8, 105 N.E.2d 843 (1952). In Bane v. LeRoux ( In re Curran), 157 B.R. 500 (Bankr.D.Mass.1993), Judge Hillman summarized the status of partners in Massachusetts for purposes of § 523(a)(4) as follows:

> Massachusetts courts have universally recognized the fiduciary relationship of partners and impose on them obligations of good faith and integrity in their dealings with one another in partnership affairs. Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 353 N.E.2d 657 (1976); Cardullo v. Landau, 329 Mass. 5, 105 N.E.2d 843 (1952); Nelson v. Bailey, 303 Mass. 522, 22 N.E.2d 116 (1939). It is a fundamental characteristic of partnership that the partners' relationship is one of trust and confidence. One partner cannot, directly or indirectly, use partnership assets for his own benefit; he or she cannot, in conducting the business of the partnership, take any profit clandestinely, the partner cannot carry on the business of the partnership for private advantage; nor can he or she avail himself or herself of knowledge or information which may be regarded as property of the partnership. Latta v. Kilbourn, 150 U.S. 524, 541, 14 S.Ct. 201, 207–08, 37 L.Ed. 1169 (1893).
>
> The Supreme Court as well as Massachusetts common law clearly evince an intent that partners act as trustees for the benefit of each other with respect to the trust res which consists of the partnership assets. A partnership is an association. Mass.Gen.L. ch. 108A § 6(1). It is created by a voluntary contract. Boyer v. Bowles, 310 Mass. 134, 37 N.E.2d 489 (1941). The Court finds that Massachusetts partnerships satisfy the necessary elements of an express trust and that partners act in a fiduciary capacity toward each other for purposes of § 523(a)(4).

157 B.R. at 509–10 (emphasis supplied).

In re Friedman, 299 B.R. at 498-99.

Because Mills held a power of attorney and was a partner with the Plaintiff in a joint venture, the Court finds that the Plaintiff has stated a plausible claim for relief under 11

U.S.C. § 523(a)(4), particularly as Mills obtained a loan from Black Rock for his lacrosse business and executed a mortgage, individually and as attorney-in-fact for the Plaintiff which secured the note and encumbered the Property.

Pursuant to Count II, the Plaintiff asserted a claim under § 523(a)(2)(A). To substantiate that claim, the Plaintiff must establish that his debt is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent *obtained, by* - false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

> [I]n order to establish that a debt is nondischargeable because obtained by "false pretenses, a false representation, or actual fraud," we have held that a creditor must show that 1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, 2) the debtor intended to deceive, 3) the debtor intended to induce the creditor to rely upon the false statement, 4) the creditor actually relied upon the misrepresentation, 5) the creditor's reliance was justifiable, and 6) the reliance upon the false statement caused damage. Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997). Though the first two elements of the Palmacci test describe the conduct and scienter required to show fraudulent conduct generally, the last four embody the requirement that the claim of the creditor arguing nondischargeability in an adversary proceeding must arise as a direct result of the debtor's fraud.

McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001) (footnote omitted).

Upon review of the Plaintiff's Complaint, the Court finds that the Plaintiff has failed to plead the requisite elements of a plausible claim under § 523(a)(2)(A) with respect to his initial $200,000 contribution to the joint venture and his subsequent advance of $115,000. Although the Plaintiff alleged that the Debtor used the monies he obtained from the Plaintiff directly and through his authority as attorney-in-fact for purposes other than those

12

of the joint venture, the Plaintiff did not allege that the Debtor obtained the initial $200,000 through fraud or deceit. Furthermore, the allegations with respect to the second advance of $115,0 00 were vague at best with respect to the requisite elements that must be alleged and later proved. Accordingly, the Court shall grant the Plaintiff leave to amend Count II of his Complaint.

The Debtor also relied upon a statute of limitations defense as grounds for dismissal. The Court rejects the Debtor's assertions because the Plaintiff timely commenced a suit in state court which was stayed by the commencement of the bankruptcy case. Upon consideration of the decision in Banks v. Gill Distrib. Centers, Inc., 263 F.3d 862, 867-68 (9th Cir. 2001),[1] the Court finds that the Plaintiff's Complaint satisfies the Iqbal test. Similarly,

---

[1] In Banks, the Ninth Circuit determined:

We hold, as did McKendry [Resolution Trust Corp. v. McKendry (In re McKendry), 40 F.3d 331 (10th Cir.1994)], that there are two distinct issues to consider in the dischargeability analysis: first, the establishment of the debt itself, which is subject to the applicable state statute of limitations; and, second, a determination as to the nature of that debt, an issue within the exclusive jurisdiction of the bankruptcy court and thus governed by Bankruptcy Rule 4007. See id. at 337.

The questions before us are whether the state court action was timely filed, and whether the filing of that action, without reducing it to judgment, was sufficient to establish a debt for purposes of the McKendry test. We hold that the state court action was timely filed and that it was sufficient to establish a debt for the purposes of the McKendry test. The Bankruptcy Code defines the term "debt" to mean "liability on a claim," 11 U.S.C. § 101(12), and "claim" is defined as a "right to payment, whether or not such right is reduced to judgment. . . ." 11 U.S.C. § 101(5). Nothing under the Bankruptcy Code requires a debt to have been reduced to a pre-petition state court judgment.

the Court finds that the Statute of Frauds does not bar the Plaintiff's action as it is clear that the Plaintiff executed a power of attorney, the parties exchanged emails that established the nature of their contractual relationship and joint venture, and the contract was one that could have been performed within one year.  *See* Kitaeff v. Johnson (In re Furst), 914 F.Supp. 734 (D. Mass. 1996).

Finally, the Court rejects Mills's argument that the Plaintiff failed to allege intent to deceive. In Sarasota CCM, Inc. v. Kuncman (In re Kuncman), 454 B.R. 276 (Bankr. E.D.N.Y. 2011), the court observed:

> Intent can be shown by presenting a combined set of circumstances demonstrating deceptive conduct by the debtor "'which indicates that he did intend to deceive and cheat the [creditor].'" In re Suarez, 367 B.R. 332, 349 (Bankr. E.D.N.Y. 2007) (quoting Hong Kong Deposit and Guar. Co. v. Shaheen (In re Shaheen), 111 B.R. 48, 53 (S.D.N.Y. 1990)). However, an inference of knowledge, without more, does not demonstrate a deliberate intention to mislead. Id. at 350 (citing cases). *See also* Kuper v. Spar (In re Spar), 176 B.R. 321, 328 (Bankr. S.D.N.Y. 1994) (in a case involving a personal loan given to the debtor under a false representation or false pretense, the court found "[t]he scienter element . . . can be inferred from the totality of the circumstances because direct proof of a debtor's state of mind is generally not available. However, fraudulent intent cannot be presumed. The permissible inference will be negated where the debtor comes forward with some evidence that he did not intend to deceive the plaintiff.") (internal citations omitted). The Bankruptcy Court for the Southern District of New York, in In re Shaheen, also found that the debtor's credibility is a substantial factor in examining the question of intent. In re Shaheen, 111 B.R. at 53 (citing In re Nelson, 561 F.2d 1342, 1347 (9th Cir.1977); In re Taylor, 514 F.2d 1370, 1373

---

Banks, 263 F.3d at 868.  *See also*  Winn v. Holdaway (In re Holdaway), 388 B.R. 767, 783 (Bankr. S.D. Tex. 2008), *aff'd,* 2009 WL 820167 (S.D. Tex. 2009); Spinnenweber v. Moran (In re Moran), 152 B.R. 493, 495 (Bankr. S.D.Ohio 1993).  Similarly, in the instant case, the Plaintiff commenced an action in the state court, but it was not reduced to a judgment because of the intervention of the Debtor's bankruptcy case.

(9th Cir. 1975)).

In re Kuncman, 454 B.R. at 284-85. The Court finds that the Plaintiff's Complaint contains sufficient factual allegations from which the Court could infer from the totality of the circumstances an intent to deceive.

## VI. CONCLUSION

In accordance with the foregoing, the Court shall enter an order denying the Defendant's Motion for Dismissal with Prejudice of All Counts and Claims and granting the Plaintiff leave to amend his Complaint and, in particular, Count II.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: December 12, 2011